Filed 7/24/24  P. v. Cardenas CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G062354 |
| v. | (Super. Ct. No. 03CF1076) |
| LUIS ALBERTO CARDENAS, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Kazuharu Makino, Judge.  Affirmed.  Request for judicial notice denied.

Benjamin Kington, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

\*　　　\*　　　\*

In 1995, Benjamin Gallardo was shot and killed by a group of rival gang members. In 2004, a jury found Luis Alberto Cardenas guilty of murder and found true a gang allegation. In 2022, Cardenas filed a petition seeking to vacate his murder conviction under former Penal Code section 1170.95 (now Pen. Code, § 1172.6).[1] In 2023, after presiding over an evidentiary hearing, the trial court denied the section 1172.6 petition.

In this appeal, appointed appellate counsel filed a brief raising no arguable issues. (See *People v. Delgadillo* (2022) 14 Cal.5th 216, 230 (*Delgadillo*); *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).) Cardenas later filed a supplemental brief on his own behalf.

In the interests of justice, this court has independently reviewed the record and found no arguable issues. (See *Delgadillo*, *supra*, 14 Cal.5th at p. 230 ["if the appellate court wishes, it may also exercise its discretion to conduct its own independent review of the record in the interest of justice"].)

We will briefly address the legal issues Cardenas raises in his supplemental brief. We affirm the order of the trial court.

I

FACTS AND PROCEDURAL BACKGROUND

On October 19, 1995, Juan L. (Juan) lived in his home on Grant Street in Santa Ana. Juan was 20 years old, and an associate member of a gang aligned with the Grant Street gang. At this time, the Grant Street gang had an ongoing rivalry with the Eastside gang, which frequently involved the use of firearms to shoot at each other. In fact, Juan's house had been shot up

---

[1] Effective June 30, 2022, Penal Code section 1170.95 was renumbered section 1172.6, with no change in text (Stats. 2022, ch. 58, § 10); all further undesignated statutory references are to the Penal Code.

several times.  Cardenas, an Eastside gang member, lived about a block away in Eastside territory.

At about 7:00 p.m., Juan was outside of his home with a fellow gang associate, George S., and two females.  A group of three to five young males were seen walking in the street corner, about 140 feet away from the home.  The young men were wearing dark, baggy clothing and carrying guns.  The guns were pointed down, and the young men were walking together very slowly.  A witness described the group's behavior as "unusual -- it's kind of like, I don't know if you have cats.  But usually if a cat is trying to hunt a bird, they pose a little bit.  It was kind of like they were walking like that."  Juan saw the young men at the corner.  He was concerned that the young men were enemies there to shoot at him, and Juan "proceeded to tell everybody, let's go [to] the backyard."

A pickup truck with two men inside drove up to the corner where the other men were standing.  Numerous shots were fired from the truck and from the group at the corner.  Juan was hit on his left side and fell to the ground.  He said, "I've been shot."  Gallardo came out of the house.  He was a Grant Street gang member who had recently been acquitted of killing an Eastside gang member.  Gallardo was shot in the head and died.  A witness said she heard someone from the group say after the shooting, "We got them."

The truck sped off and a neighbor who had known Cardenas since he was a child saw Cardenas and two other males running from the area of the shooting.  The neighbor saw Cardenas lift up his shirt and put a chrome, semi-automatic pistol in his waistband.  The neighbor saw the group run to Cardenas' home and quickly emerge after changing clothes.  One of the females who was outside of Juan's home at the time of the shooting, later

3

identified Cardenas as one of the shooters from a photographic lineup.

*Court Proceedings*

In 2003, about eight years after the shooting, the prosecution filed an information charging Cardenas with murder. The information alleged Cardenas personally used a weapon, and the crime was committed for the benefit of the Eastside criminal street gang.

In 2004, the matter went to trial. The neighbor who identified Cardenas to the police testified at the trial, but she denied having previously identified Cardenas. The court instructed the jury on a theory of direct aiding and abetting, as well as a natural and probable consequences theory. The jury convicted Cardenas of murder and found true the gang allegation but found the firearm allegation not true. The court imposed a sentence of 25 years to life, plus two years for the gang enhancement. On appeal, this court struck the two-year term for the gang enhancement, but otherwise affirmed the conviction and sentence. (See *People v. Cardenas* (June 28, 2005, G034110) [nonpub. opn.].)

In 2022, Cardenas filed a section 1172.6 petition. The prosecution conceded Cardenas made the requisite "prima facie showing and an order to show cause should be issued." Prior to an evidentiary hearing, Cardenas was appointed counsel. At the hearing, Cardenas called a former gang member as an expert witness. When asked how gangs handle guns after a shooting, he said, "Usually the person who actually does the shooting will hand the gun off to someone who had not shot so that the person who did the actual shooting isn't caught with a weapon."

At the conclusion of the hearing, the trial court found that

4

evidence "showed the defendant is a part of this group that went to this location." The court said this was a planned "shooting of a rival gang."

The trial court found Cardenas "being there with his gang members, it's beneficial to the other participants in the shooting because he's basically another set of eyes." The court said, "And maybe he would be there also to take the gun after the shooting is done. [¶] But this is clearly a joint venture planned by all of them together. They are jointly participating. And they jointly leave. They change their appearance afterwards. And they do so together." The court noted, "Cardenas's participation, even though the jury could not find beyond a reasonable doubt that he used the gun, his participation is no different in terms of his intent and what he and the other two planned to do."

The trial court said, "So the petition is denied. The conviction will stand as it was previously . . . determined by the jury. [¶] And, you know, just as a side note, I think it would have been perfectly appropriate. I agree with [defense counsel's] view that a 20-year sentence would have been more than sufficient for what happened in this case. But he got convicted on a charge where the requirement by law is he's sentenced to 25 years to life."

After the hearing, Cardenas's trial counsel filed a notice of appeal. Appointed appellate counsel filed an opening brief consistent with the procedures outlined in *Delgadillo, supra*, 14 Cal.5th 216, and *Wende, supra,* 25 Cal.3d 436. [2] Appellate counsel noted two issues counsel had

---

[2] Cardenas filed a motion asking this court to take judicial notice of the reporter's and clerk's transcripts from the original appeal (*People v. Cardenas, supra*, G034110). But those 2004 trial records were lodged in the trial court and are already part of the record on appeal. Thus, the request for judicial notice is denied.

considered, but did not argue within the brief:

"1.  The superior court ruled that the evidence in the trial transcripts proved beyond a reasonable doubt that Cardenas was guilty of murder under the current versions of sections 188 and 189.  [Citation.]  Was this ruling supported by substantial evidence? . . .

"2.  After Cardenas's original trial, the California Supreme Court decided *People v. Sanchez* (2016) 63 Cal.4th 665, which held that when an expert relates case-specific hearsay and treats those statements as true to support the expert's opinion, those statements are hearsay.  (*Id.* at p. 684.)  Cardenas objected to several portions of the gang expert's testimony as hearsay, and the trial court overruled some of those objections.  [Citations.]  Were these rulings correct, and if not, was the error prejudicial?"

Cardenas later filed a supplemental brief on his own behalf raising several related issues.

II

DISCUSSION

When a defendant's appointed appellate counsel identifies no arguable issues on appeal, an appellate court may independently review the record for arguable issues.  (*Delgadillo*, *supra*, 14 Cal.5th at p. 230; *Wende*, *supra*, 25 Cal.3d at pp. 441-442.)

Generally, "an arguable issue on appeal consists of two elements.  First, the issue must be one which, in counsel's professional opinion, is meritorious.  That is not to say that the contention must necessarily achieve success.  Rather, it must have a reasonable potential for success.  Second, if successful, the issue must be such that, if resolved favorably to the appellant,

the result will either be a reversal or a modification of the judgment." (*People v. Johnson* (1981) 123 Cal.App.3d 106, 109.)

If a defendant files his own supplemental brief, the "opinion must reflect the contentions and the reasons that they fail." (*People v. Kelly* (2006) 40 Cal.4th 106, 120.) However, a "decision does not require an extended discussion of legal principles. [Citation.] Moreover, a recitation of each of the defendant's assertions will not be necessary in all cases; the purposes of the constitutional requirement [for a written decision] may in some circumstances be satisfied by a summary description of the contentions made and the reasons they fail." (*Id.* at p. 121.)

Here, we have reviewed the record on appeal. We agree with counsel's analysis that there are no "arguable issues," including the two issues identified and rejected by counsel. That is, we find substantial evidence to support the trial court's ruling, and we do not find that the trial court abused its discretion in its hearsay rulings concerning gang expert testimony. (See *People v. Sanchez*, *supra*, 63 Cal.4th at p. 684.) Thus, we affirm the trial court's denial of Cardenas's section 1172.6 petition.

Cardenas does not appear to dispute the trial court's conclusion that he was not entitled to resentencing relief under section 1172.6. Instead, Cardenas makes a few related claims that we will briefly address.

Cardenas argues that this court should stay the proceeding so that he can file various claims of alleged racial discrimination at his trial under the California Racial Justice Act (CRJA). (§ 745.) For instance, Cardenas contends that a witness's trial testimony comparing his actions before the shooting to the actions of a cat hunting a bird established racial prejudice. However, we are not going to analyze these alleged issues because

7

they are not cognizable (reviewable) claims in an appeal from an order denying a section 1172.6 petition. (See, e.g., *People v. Strong* (2022) 13 Cal.5th 698, 714–715 [recognizing that a defendant may pursue other avenues of relief independent of a section 1172.6 petition].)

Cardenas also argues that he is entitled to relief due to a recent change to the law concerning the trying of a gang enhancement. (See § 186.22.) But again, we are not going to analyze this issue because it is not cognizable in an appeal from an order denying a section 1172.6 petition. (See, e.g., *People v. Burgos* (2024) 16 Cal.5th 1 [amendment to section 186.22 allowing the defense to request a bifurcated trial on a gang enhancement did not apply retroactively].)

Cardenas also argues that based on the trial court's comments regarding the length of his prison sentence (25 years to life), and the fact that he was 17 years old at the time the murder was committed, that this court should remand the matter for resentencing. But once again, Cardenas's argument does not challenge the legal basis of the trial court's denial of his section 1172.6 petition, so it is beyond the scope of our review.[3]

Finally, Cardenas argues: "In the appellant's opening brief, appointed counsel attempts to apparently abandon appellant during these proceedings." We disagree.

In *Wende*, the Supreme Court "'approved a modified procedure to *ensure* an indigent criminal defendant's right to effective assistance of counsel.'" (*Delgadillo*, *supra*, 14 Cal.5th at p. 225, italics added.) "As a

---

[3] "A person who was convicted of a controlling offense that was committed when the person was 25 years of age or younger and for which the sentence is a life term of 25 years to life shall be eligible for release on parole at a youth offender parole hearing during the person's 25th year of incarceration." (§ 3051, subd. (b)(3).)

general matter, where appointed appellate counsel is unable to find viable issues to raise on appeal, Fourteenth Amendment principles of due process and equal protection require reviewing courts to independently examine the record for any arguable issue on appeal from a defendant's 'first appeal as a matter of right.'" (*People v. Vera* (2023) 97 Cal.App.5th Supp. 10, 21, citing *Anders v. California* (1967) 386 U.S. 738, 743–745 (*Anders*); *Wende, supra,* 25 Cal.3d at pp. 441–442.) "Specifically, *Wende* provides at least two tiers of review and 'ensures that a trained legal eye has searched the record for arguable issues and assists the reviewing court in its own evaluation of the case.'" (*Delgadillo,* at p. 226.)

"However, the procedures set out in *Anders* and *Wende* do not apply to an appeal from the denial of postconviction relief, even if the defendant has a state-created right to the appointment of counsel for that appeal." (*Delgadillo, supra,* 14 Cal.5th at p. 226.)

Here, in the interests of justice, we have conducted an additional review of the record, and the issues specifically identified by appointed counsel, and we have similarly identified no "arguable issue on appeal." (See *People v. Johnson, supra,* 123 Cal.App.3d at p. 109.)

In sum, Cardenas has not challenged the trial court's ruling regarding the section 1172.6 petition in his supplemental brief. Thus, we affirm the order of the court denying the section 1172.6 petition.

9

III

DISPOSITION

The trial court's order denying Cardenas's section 1172.6 petition is affirmed.


MOORE, J.

WE CONCUR:


O'LEARY, P. J.


MOTOIKE, J.